**BLUMENTHAL, NORDREHAUG & BHOWMIK**
  Norman B. Blumenthal (State Bar #068687)
  Kyle R. Nordrehaug (State Bar #205975)
  Aparajit Bhowmik (State Bar #248066)
  Piya Mukherjee (State Bar #274217)
2255 Calle Clara
La Jolla, CA 92037
Telephone: (858)551-1223
Facsimile: (858) 551-1232
Website: www.bamlawca.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA PERRY, ARMAKIA MARINER-REED, JASON HILTON and PATRYCE COUNTS, as individuals, and on behalf of all persons similarly situated,<br><br>    Plaintiffs,<br><br>    vs.<br><br>ARISE VIRTUAL SOLUTIONS INC., a Delaware Corporation,<br><br>    Defendant. | CASE No. **4:11-cv-01488-YGR**<br><br>NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT;<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT<br><br>Hearing Date: December 11, 2012<br>Hearing Time: 2:00 p.m.<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Courtroom: 5, Oakland Courthouse |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on December 11, 2012 at 2:00 p.m., before the Honorable Yvonne Gonzalez Rogers in Courtroom 5 of the United States District Court for the Northern District of California, Oakland Courthouse, Plaintiffs will move and hereby do move for Preliminary Approval of the proposed class settlement in this case.  This motion is unopposed as based on the Joint Stipulation of Class Action Settlement ("Settlement" or "Agreement") between the parties filed concurrently with this motion.

The motion will be based on this Notice of Motion, the Memorandum of Points and Authorities filed herewith, the Declaration of Norman B. Blumenthal and attached exhibits, the argument of counsel and upon such other material contained in the file and pleadings of this action.

Dated: October 25, 2012            **BLUMENTHAL, NORDREHAUG & BHOWMIK**

By:_____*/s/ Norman B. Blumenthal*_____
                              Norman B. Blumenthal
                              Attorneys for Plaintiffs

# **TABLE OF CONTENTS**

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   DESCRIPTION OF THE SETTLEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.  NATURE OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.   PLAN OF ALLOCATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

V.    THE SETTLEMENT MEETS ALL CRITERIA NECESSARY FOR
      PRELIMINARY APPROVAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      A.    The Role Of The Court In Preliminary Approval Of A Class Action
            Settlement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      B.    Factors To Be Considered In Granting Preliminary Approval . . . . . . . . . . . 12

            1.    The Settlement Is the Product of Serious, Informed and
                  Noncollusive Negotiations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

            2.    The Settlement Has No "Obvious Deficiencies" and Falls
                  Within the Range for Approval . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

            3.    The Settlement Does Not Improperly Grant Preferential
                  Treatment To The Class Representative or Segments Of
                  The Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

            4.    The Stage Of The Proceedings Is Sufficiently Advanced To Permit
                  Preliminary Approval Of The Settlement . . . . . . . . . . . . . . . . . . . . . 17

VI.   THE CLASS IS PROPERLY CERTIFIED FOR SETTLEMENT PURPOSES . . . 19

      A.    Rule 23 of the Federal Rules of Civil Procedure Governs . . . . . . . . . . . . . 19

      B.    The Numerosity Requirement Is Satisfied . . . . . . . . . . . . . . . . . . . . . . . . 20

      C.    Common Questions of Law and Fact Bind the Class . . . . . . . . . . . . . . . . . 20

      D.    The Claims of the Plaintiff Are Typical of the Class Claims . . . . . . . . . . . 21

      E.    The Class Representative Has Fairly and Adequately Protected the
            Interest of the Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

      F.    For the Class As Alleged in the Amended Complaint, The Additional
            Requirements of Rule 23 Are Satisfied . . . . . . . . . . . . . . . . . . . . . . . . . . 23

VII.  THE PROPOSED METHOD OF CLASS NOTICE IS APPROPRIATE . . . . . . . . 25

VIII. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

1

## **TABLE OF AUTHORITIES**

2

**Cases**:

3

Ansari v. New York Univ.,
179 F.R.D. 112 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

4

5

Armstrong v. Board of School Directors,
616 F.2d 305 (7th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

6

Buchholtz v. Swift & Co.,
62 F.R.D. 581 (D.Minn. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

7

8

Consolidated Rail Corp. v. Town of Hyde Park,
47 F.3d 473 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

9

Detroit v. Grinnell Corp.,
495 F.2d 448 (2d Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

10

11

Donaldson v. Pillsbury Co.,
554 F.2d 825 (8th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

12

In re Dun & Bradstreet Credit Servs. Customer Litig.,
130 F.R.D. 366 (S.D. Ohio 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

13

14

EEOC v. Kovacevich "5" Farms,
2007 U.S. Dist. LEXIS 32330 (E.D.Cal. April 18, 2007) . . . . . . . . . . . . . . . . . . . 20

15

Estrada v. FedEx Ground Package System, Inc.,
154 Cal.App.4th 1 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

16

17

Fisher Bros. v. Cambridge-Lee Indus., Inc.,
630 F. Supp. 482 (E.D. Pa. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

18

Gautreaux v. Pierce,
690 F.2d 616 (7th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

19

20

Ghazaryan v. Diva Limousine, Ltd.,
169 Cal. App. 4th 1524 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

21

Glass v. UBS Fin. Servs.,
2007 U.S. Dist. LEXIS 8476 (N.D. Cal. 2007) . . . . . . . . . . . . . . . . 15, 16, 17, 18, 19

22

23

Hanlon v. Chrysler Co.,
150 F.3d 1011 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 21

24

In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,
55 F.3d 768 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

25

26

In re Jiffy Lube Sec. Litig.,
927 F.2d 155 (4th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

27

In re Wash. Public Power Supply System Sec. Litig.,
720 F. Supp. 1379 (D. Ariz. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

28

*In re Wirebound Boxes Antitrust Lit.,*
   128 F.R.D. 268 (D. Minn. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*In re Workers' Compensation,*
   130 F.R.D. 99 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 25

*Jenkins v. Raymark Ind., Inc.,*
   782 F.2d 468 (5th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Jenson v. Continental Fin. Corp.,*
   404 F. Supp. 806 (D. Minn. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Jordan v. County of Los Angeles,*
   669 F.2d 1311 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Kirkorian v. Borelli,*
   695 F. Supp. 446 (N.D. Cal. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Lockwood Motors, Inc. v. General Motors Corp.,*
   162 F.R.D. 569 (D. Minn. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21, 23

*Louie v. Kaiser Found. Health Plan, Inc.,*
   2008 U.S. Dist. LEXIS 78314 (S.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Lyons v. Marrud, Inc.,*
   [1972-1973 Transfer Binder] Fed. Sec. L. Rep.
   (CCH) Paragraph 93,525 (S.D.N.Y. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Mercury Interactive Corp. Secs. Litig. v. Mercury Interactive Corp.,*
   618 F.3d 988 (9th Cir 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Officers for Justice v. Civil Serv. Comm'n,*
   688 F.2d 615 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.,*
   323 F. Supp. 364 (E.D. Pa. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Prince v. CLS Transportation, Inc.,*
   118 Cal.App.4th 1320 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,*
   390 U.S. 414 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Reed v. General Motors Corp.,*
   703 F.2d 170 (5th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Slaven v. BP Am., Inc.,*
   190 F.R.D. 649 (C.D. Cal. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Staton v. Boeing,*
   327 F.3d 938 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 21

*Tate v. Weyerhaeuser Co.,*
   723 F.2d 598 (8th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

_Valentino v. Carter-Wallace, Inc._,
  97 F.3d 1227, 1234 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

_Van Vranken v. Atlantic Richfield Co._,
  901 F.Supp. 294 (N.D. Cal. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

_Weinberger v. Kendrick_,
  698 F.2d 61 (2d Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

_White v. Local 942_,
  688 F.2d 85 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

**Statutes:**

California Business & Professions Code § 17200 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

California Labor Code § 226 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

California Labor Code § 510 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

California Labor Code § 1194 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

California Labor Code § 1197 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

California Labor Code § 1197.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

California Labor Code § 1198 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

California Labor Code § 2698 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 9

California Labor Code § 2699 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 9

California Labor Code § 2802 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Fed. Rules Civ. Proc., rule 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . _passim_

**Secondary Authorities:**

2 H. Newberg & A. Conte, _Newberg on Class Actions_ (3d ed. 1992) . . . . . . . . . . 10, 23, 27

_Manual for Complex Litigation_, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 12, 27

3B J. Moore, _Moore's Federal Practice_ §§23.80 - 23.85 (2003) . . . . . . . . . . . . . . . . . . . . . 11

1   Plaintiffs Sandra Perry, Armakia Mariner-Reed, and Patryce Counts ("Plaintiffs")

2   respectfully submit this memorandum of points and authorities in support of the motion for

3   preliminary approval of settlement of the class action.

4   **I.    INTRODUCTION**

5   Plaintiff and Defendant Arise Virtual Solutions Inc. ("Defendant" or "Arise") have

6   reached a full and final settlement of the above-captioned class action, which is embodied in the

7   Joint Stipulation of Class Action Settlement ("Settlement" or "Agreement") filed concurrently

8   with the Court.[1]  By this motion, Plaintiff seeks preliminary approval from the Court of the

9   Agreement (a copy is attached as <u>Exhibit 1</u> to the Declaration of Norman Blumenthal, served

10  and filed herewith), conditional certification of the Settling Classes, entry of the Preliminary

11  Approval Order, and scheduling of the Final Approval Hearing to determine final approval of

12  the Settlement.

13  **II.    DESCRIPTION OF THE SETTLEMENT**

14  The Parties, after litigation and settlement negotiations, agreed to a settlement that is fair,

15  reasonable and favorable to the Settling Classes, which are defined as:

16      (a)    All individuals who provided customer service or technical support
services on applications for AT&T Mobility LLC accounts, while located in the
17  State of California, pursuant to Statements of Work with Arise Virtual Solutions
Inc. during the period March 28, 2007 through to the earlier of the date this
18  Settlement receives Preliminary Approval or August 31, 2012 (hereafter referred
to as the "Perry Class"); and,
19

20      (b)    All individuals who provided customer service or technical support
services on applications for Apple Inc. accounts, while located in the State of
21  California, pursuant to Statements of Work with Arise Virtual Solutions Inc.
during the period December 8, 2007 through to the earlier of the date this
22  Settlement receives Preliminary Approval or August 31, 2012 (hereafter referred
to as the "Counts Class").

23  Agreement at ¶20.

24  After law and motion practice and exchanging written discovery requests and responses,

25  the parties began to discuss early resolution and scheduled a mediation.  In furtherance of these

26  

27     [1]   Capitalized terms in this Memorandum have the same meaning as contained in the

28  Agreement.

communications, Arise provided aggregate information regarding the class size and log-in records. On May 3, 2012, the parties engaged in an all day mediation before respected mediator David Rotman. Ultimately, after vigorous negotiations at the mediation, the parties reached an agreement in principle regarding settlement of the class claims. Over the next several months, the Settling Parties negotiated the full terms and language of this Agreement. Declaration of Norman Blumenthal, ("Decl. Blumenthal") at ¶7. As a result of these negotiations, the parties reached a class settlement that they believe to be fair and reasonable in light of the experience of the Parties' attorneys as counsel in other wage and hour cases, and the uncertainties and cost of the years of litigation the Parties faced if the settlement was not reached. Decl. Blumenthal, ¶7.

Under the terms to which the Parties have agreed, Defendant agrees to pay one million two hundred forty five thousand U.S. dollars and no cents ($1,245,000.00) (the "Gross Settlement Value" or "GSV") to be paid as compensation for all alleged damages and in consideration for the settlement and dismissal with prejudice of the Lawsuit and the related release of all claims the Named Plaintiffs, and the members of the Settling Classes may have against Arise, and AT&T and Apple, as contained in Paragraphs 38, 57, 61, 62, and 63 of the Agreement. (Agreement at ¶15.)  The GSV will cover compensation to the Settling Class, payment to the State of California for penalties under PAGA, additional compensation to the Named Plaintiffs as the class representatives, the cost of claims administration and notice, and attorneys' fees and reimbursement of litigation costs and expenses to Class Counsel. This is a non-reversionary settlement, which means that once the Agreement is final and effective, no part of the GSV shall revert to Arise. (Agreement at ¶18.) Decl. Blumenthal, ¶5.

As per Paragraph 51 of the Agreement, all costs, attorneys' fees, costs of claims administration and notice, Enhancement Awards, and the PAGA payment to the State of California will be deducted from the GSV. The Net Settlement Value shall be defined as the value of the GSV less the above deductions. (Agreement at ¶51.) The Net Settlement Value shall be allocated to the Settling Classes as follows:  (a) the Claims Administrator will

1   determine, from either the spreadsheets referenced in Paragraph 26 or the resolution of a dispute

2   pursuant to Paragraph 56, the number of weeks that the member of the Settling Classes provided

3   customer service or technical support services on applications for AT&T or Apple accounts

4   while in the State of California during the applicable Class Period (the "Compensable

5   Intervals"); (b) the total number of Compensable Intervals attributable to all members of the

6   Settling Classes who filed a timely and complete Claim Form will then be divided into the NSV,

7   with the number of Compensable Intervals as the denominator and the NSV as the numerator,

8   with the resulting number determined to two decimal places; and (c) the product of this

9   calculation will be the Per Interval Payment.   (Agreement at ¶58.)  The disbursement to each

10  member of the Settling Classes who returns a timely and complete Claim Form (the "Class

11  Member Payment") shall be the number which results from multiplying the Per Interval

12  Payment times the number of Compensable Intervals worked by a given member of the Settling

13  Classes..  (Agreement at ¶59.)  The amount of any settlement checks that are not cashed by

14  members of the Settling Classes shall be distributed cy pres as an additional PAGA payment to

15  the Labor and Workforce Development Agency for enforcement of labor laws and education

16  of employers and employees about their rights and responsibilities in accordance with Labor

17  Code §2699(i).  (Agreement at ¶51.)  Decl. Blumenthal, ¶6.

18      This is an excellent result for the members of the Class.  Liability in this case was

19  uncertain because a jury may have found that some or all of the Class Members may have been

20  correctly classified as independent contractors.  Indeed, some courts have approved independent

21  contractor classifications in cases involving similar facts.  Decl. Blumenthal, ¶8.  Moreover,

22  there was further uncertainty as to whether class certification could have been achieved and

23  maintained throughout the litigation. These defenses could have reduced the amount recovered

24  or denied a recovery altogether to the members of the class.   Decl. Blumenthal, ¶8.

25  **III.    NATURE OF THE CASE**

26      Beginning in or about June 2009, Arise contracted with AT&T Mobility LLC ("AT&T")

27  to provide customer service and technical support services on projects, also called

28

---

"applications," for AT&T, and to do so through a network of independent businesses. Those businesses entered into contracts with Arise and engaged individuals located in the State of California, sometimes referred to as "Arise Certified Professionals" ("ACPs"), to provide such services. At all times relevant to this Agreement, specifically going back to at least December 2007, Arise also contracted with Apple Inc. ("Apple") to provide customer service and technical support services on projects, or applications, for Apple, and to do so through a network of independent businesses. Those businesses entered into contracts with Arise and engaged individuals located in the State of California, sometimes referred to as ACPs, to provide such services. Decl. Blumenthal, ¶9.

Named Plaintiff Perry, who was an owner of an independent business that had contracted with Arise to provide services on applications for AT&T accounts and who was engaged as an ACP by such independent business, filed a putative class action Complaint [Doc No. 1] against Arise and AT&T in the U.S. District Court, the Northern District of California, on March 28, 2011. On May 12, 2011, Perry filed a First Amended Complaint [Doc No. 8] against Arise and AT&T. Arise brought a motion to dismiss the action under Fed. R. Civ. P. 12(b)(3) for improper venue, or in the alternative, to transfer [Doc No. 21], in which AT&T joined [Doc No. 26]. After briefing and a hearing, the motion was denied. [Doc. No. 62]. On September 26, 2011, Arise and AT&T each filed Answers [Doc Nos. 66-67] to the First Amended Complaint. Decl. Blumenthal, ¶10.

On October 25, 2011, the parties participated in an early mediation session, with a court-provided Early Neutral Evaluator. The case did not settle. On April 9, 2012, a Second Amended Complaint [Doc No. 79] was filed, adding Mariner-Reed as a Named Plaintiff. Decl. Blumenthal, ¶10.

On December 8, 2011, in a separate action, Plaintiff Jason Hilton, represented by the same Plaintiffs' counsel as in the Perry Case - Blumenthal, Nordrehaug and Bhowmik and the Law Offices of Mark A. Osman - filed a putative class action Complaint against Apple in California Superior Court, Santa Clara County (hereafter the "Hilton Case"). On January 6,

2012, a First Amended Complaint was filed in which Counts was added as a Named Plaintiff, and on March 12, 2012, a Second Amended Complaint was filed.   Counts purported to represent a class of all ACPs who provided customer services and technical support services on applications for Apple accounts, while located in California, and were allegedly misclassified as independent contractors, when they allegedly should have been  properly classified as the employees of Apple.  Decl. Blumenthal, ¶11.

On April 5, 2012, Apple filed a Petition to Compel Arbitration of the Hilton Case, in lieu of filing an answer.  Also on April 5, 2012, Arise filed a Motion for Leave to Intervene, and also a Petition to Compel Arbitration.  All three motions were scheduled for hearing in the Santa Clara Superior Court on July 31, 2012.  Decl. Blumenthal, ¶12.

On June 18, 2012, the Santa Clara County Superior Court entered an Order dismissing the Hilton Case without prejudice, based on the Stipulation of the parties and Request for Dismissal, pursuant to the Memorandum of Understanding.  And on July 10, 2012, a Third Amended Complaint [Doc No. 88] was filed in the Perry Case, based on the Stipulation of the parties, and pursuant to the Memorandum of Understanding.  The Third Amended Complaint added putative class claims against Arise only, on behalf of Counts individually and on behalf of all individuals based in California who provide, and did provide, customer service and technical support services on Apple applications pursuant to Statements of Work with Arise, as well as an individual claim by Jason Hilton.  (Hereafter, the above-captioned case, in which such Third Amended Complaint was filed, is referred to as the "Lawsuit.")  This Lawsuit is currently captioned *Perry, et al. v. Arise Virtual Solutions Inc.*, and bears Case Number C 11-01488 YGR.  Decl. Blumenthal, ¶13.

Substantial discovery took place in the Perry Case.  During late 2011 and early 2012, the depositions of Named Plaintiffs Perry and Mariner-Reed were taken, as were the 30(b)(6) depositions of two Arise witnesses and two AT&T witnesses.  Voluminous written and document discovery has been exchanged by the parties:  Plaintiffs propounded five sets of Requests for Production on each defendant, AT&T and Arise, for a total of 321 Requests; Plaintiffs also propounded a total of 26 Interrogatories and a total of 65 in Requests for

Admissions on the defendants; Arise propounded a set of Requests for Production and Interrogatories on each Named Plaintiff; Arise produced approximately 64,700 pages of documents; AT&T produced approximately 12,100 pages of documents; and, Plaintiffs produced approximately 5,100 pages of documents.  Decl. Blumenthal, ¶14.

The Lawsuit generally alleges that all ACPs who provided customer service and technical support services on applications for AT&T or Apple, while located in California, were misclassified as independent contractors, and allegedly, should have been properly classified as the employees of AT&T, Apple and/or Arise. On that basis, Arise, Apple and AT&T allegedly were liable for:  failure to pay minimum wage and overtime compensation in accordance with California law, in violation of California Labor Code §§ 510, 1194, 1197, 1197.1 and 1198 et seq.; failure to provide meal periods in conformance with California law; failure to provide rest breaks in accordance with California law; failure to provide properly itemized wage statements in accordance with California Labor Code § 226; failure to reimburse employees for required business expenses in violation of California Labor Code § 2802; engaging in unfair business practices in violation of California Business & Professions Code § 17200 et seq.; and violation of The California Labor Code Private Attorney General Act of 2004, California Labor Code §§ 2698 et seq. ("PAGA").    The Lawsuit requests that the Settling Classes be certified as a class and subclass under Federal Rule of Civil Procedure 23, and as a representative action under PAGA, and seeks unpaid wages, statutory and/or civil penalties, liquidated damages, compensatory damages, injunctive relief, premium pay/wages, restitution, declaratory relief, disgorgement, attorneys' fees and costs, interest, and such other relief as the Court may award.  Decl. Blumenthal, ¶15.

Although a settlement has been reached, Defendant specifically and generally denies all of the claims asserted in the Litigation, denies any and all liability or wrongdoing of any kind whatsoever associated with any of the facts or claims alleged in the Litigation, and makes no concessions or admissions of wrongdoing or liability of any kind whatsoever.  Defendant maintains that all of the members of the Settling Classes were properly classified and that Defendant complied with all applicable federal, state, and local laws, regulations, and

ordinances.  In particular, Defendant takes the position that the putative class members in question were bona fide independent contractors.  Nonetheless, the Settling Parties have agreed to avoid further litigation and to settle and resolve all existing and potential disputes, actions, lawsuits, charges and claims that the Settling Class has or may have against Arise, Apple and AT&T, to the fullest extent permitted by law and without any admission of liability or wrongdoing by either party. The Named Plaintiff and his counsel have concluded that the Settlement is fair, reasonable, and in the best interests of the putative members of the Settling Class and respectfully request that the Settlement be approved by the Court.  Decl. Blumenthal, ¶16.

Plaintiffs contends that Defendant violated California wage and hour laws and that the Lawsuit is appropriate for class certification on the basis that the Plaintiffs' claims meet the requisites for class certification.  While continuing to deny that class certification would be proper for litigation purposes, Defendant has stipulated that the above Settling Classes may be certified for settlement purposes only.  (Agreement at ¶20.) The Parties agree that certification for settlement purposes is not an admission that class certification would be proper if the class certification issue were litigated.  Further, this agreement is not admissible in this or any other proceeding as evidence that the Settling Classes could be certified absent a settlement.  Solely for purposes of settling the lawsuits, the Parties stipulate and agree that the requisites for establishing class certification with respect to the Settling Classes, as defined above, have been met and are met.  Decl. Blumenthal, ¶17.

Class Counsel has conducted a thorough investigation into the facts of the class action. Class Counsel has diligently evaluated the Class Members' claims against Defendant.  Prior to the Parties reaching an the agreement to settle the Lawsuit, counsel for Defendant provided Class Counsel with access to information regarding the AT&T application "log in" hours associated with Perry, Mariner-Reed and the putative class members, including spreadsheets with detailed, anonymized, AT&T application "log in" hours and compensation data associated with the putative class members.  Based on the foregoing data and their own independent investigation and evaluation, Class Counsel believes that the settlement with Defendant for the

consideration and on the terms set forth in the Agreement is fair, reasonable, and adequate and is in the best interest of the Settling Classes in light of all known facts and circumstances, including the risk of significant delay, the likelihood that Defendant would prevail on its defenses, and numerous potential appellate issues.  Decl. Blumenthal at ¶18.

## IV.   PLAN OF ALLOCATION

To implement the terms of this Settlement, Defendant agrees to establish a Gross Settlement Value ("GSV") of one million two hundred forty five thousand U.S. dollars and no cents ($1,245,000.00) to be distributed to the Settling Classes according to the plan of allocation in the Agreement. (Agreement at ¶15.) All costs, attorneys' fees, costs of claims administration and notice, Enhancement Awards, and the PAGA payment to the State of California will be deducted from the GSV.  The Net Settlement Value shall be defined as the value of the GSV less the above deductions. (Agreement at ¶49.)  Decl. Blumenthal at ¶19.

The Net Settlement Value shall be allocated to the Settling Class as follows: (a) The Claims Administrator will determine, from either the spreadsheets referenced in Paragraph 26 or the resolution of a dispute pursuant to Paragraph 56, the number of weeks that the member of the Settling Classes provided customer service or technical support services on applications for AT&T or Apple accounts while in the State of California during the applicable Class Period (the "Compensable Intervals"); (b) The total number of Compensable Intervals attributable to all members of the Settling Classes who filed a timely and complete Claim Form will then be divided into the NSV, with the number of Compensable Intervals as the denominator and the NSV as the numerator, with the resulting number determined to two decimal places; and (c) The product of this calculation will be the Per Interval Payment.  (Agreement at ¶58.)  The disbursement to each member of the Settling Classes who returns a timely and complete Claim Form (the "Class Member Payment") shall be the number which results from multiplying the Per Interval Payment times the number of Compensable Intervals worked by a given member of the Settling Classes.  (Agreement at ¶59.)   Decl. Blumenthal at ¶20.

This is a non-reversionary settlement, which means that once the Agreement is final and effective, no part of the GSV shall revert to Arise.  (Agreement at ¶18.)  The amount of any

settlement checks that are not cashed by Settling Class Members shall be distributed *cy pres* as an additional PAGA payment to the Labor and Workforce Development Agency for enforcement of labor laws and education of employers and employees about their rights and responsibilities in accordance with Labor Code §2699(i).   (Agreement at ¶51.)    Decl. Blumenthal at ¶21.

Within 15 days of entry of the Preliminary Approval Order, Arise shall deposit the full GSV in a non interest-bearing account to be established by the Claims Administrator.  The GSV shall remain in said account pending occurrence of the Effective Date.   The Claims Administrator shall not disburse any portion of these funds until after the Effective Date.  Decl. Blumenthal at ¶22.

From the GSV, Ten thousand U.S. dollars and no cents ($10,000.00) of the GSV (the "PAGA Allocation") shall be allocated to claims under the Labor Code Private Attorney General Act of 2004, California Labor Code §§ 2698 et seq.  (Agreement at ¶15.)  Decl. Blumenthal at ¶23.

Subject to Court approval, the Settling Parties agree that Gilardi & Co., LLC will be appointed as Claims Administrator.  Claims Administrator's fees and costs shall be capped at twenty thousand dollars and no cents ($20,000.00) which shall be paid from the GSV. (Agreement at ¶22.)  Decl. Blumenthal at ¶24.

Class Counsel will apply to the Court for an award of: (i) attorneys' fees in an amount up to, but not more than, thirty percent (30%) of the GSV; and (ii) reasonable and necessary costs and expenses (including expenses incurred by Named Plaintiff in the prosecution of this action) in an amount up to, but not more than, forty thousand dollars and no cents ($40,000.00), which amounts awarded shall be paid from the GSV.  (Agreement at ¶45.)  Class Counsel will also apply to the Court for the following additional awards to Named Plaintiffs (the "Enhancement Awards") in an amount not to exceed $5,000.00 to Plaintiffs Mariner-Reed and Counts, and $30,000.00 to Plaintiff Perry, as reasonable additional compensation for the time and effort expended by them in connection with the initiation and maintenance of the Lawsuit

1    and in consideration for the general release set out in Paragraph 62 and contract termination by

2    such Plaintiff and any Related Business Entity set out in Paragraph 19.  (Agreement at ¶46.)

3    Class Counsel's application shall be scheduled for determination at the Final Approval Hearing,

4    but Class Counsel's application shall be filed and served before the Class Notice is distributed

5    and will be posted on Class Counsel's website and the Claims Administrator's website.  Decl.

6    Blumenthal at ¶25.

7
     ## V.    THE SETTLEMENT MEETS ALL CRITERIA NECESSARY FOR
8            PRELIMINARY APPROVAL

9         When a proposed class-wide settlement is reached, the settlement  must be submitted to

10   the court for approval.  Fed. R. Civ. P. 23(e)(1)(A); 2 H. Newberg & A. Conte, Newberg on

11   Class Actions (3d ed. 1992) at §11.41, p.11-87.  Preliminary approval is the first of three steps

12   that comprise the approval procedure for settlements of class actions.  See e.g. Louie v. Kaiser

13   Found. Health Plan, Inc., 2008 U.S. Dist. LEXIS 78314 (S.D. Cal. 2008).  The second step is

14   the dissemination of notice of the settlement to all class members.  The third step is a final

15   settlement approval hearing, at which evidence and argument concerning the fairness, adequacy,

16   and reasonableness of the settlement may be presented and class members may be heard

17   regarding the settlement.  See Manual for Complex Litigation, Second §30.44 (1993).

18        The question presented on a motion for preliminary approval of a proposed class action

19   settlement is whether the proposed settlement is "within the range of possible approval."

20   Manual for Complex Litigation, Second §30.44 at 229; Gautreaux v. Pierce, 690 F.2d 616, 621

21   n.3 (7th Cir. 1982); Louie, supra, at *7.   Preliminary approval is merely the prerequisite to

22   giving notice so that "the proposed settlement . . . may be submitted to members of the

23   prospective Class for their acceptance or rejection."   Philadelphia Housing Authority v.

24   American Radiator & Standard Sanitary Corp., 323 F. Supp. 364, 372 (E.D. Pa. 1970).  There

25   is an initial presumption of fairness when a proposed settlement, which was negotiated at arm's

26   length by Class Counsel, is presented for court approval.  Newberg, 3d Ed., §11.41, p.11-88.

27   However, the ultimate question of whether the proposed settlement is fair, reasonable and

28

adequate is made after notice of the settlement is given to the class members and a final settlement hearing is held by the Court.

**A.     The Role Of The Court In Preliminary Approval Of A Class Action Settlement**

The approval of a proposed settlement of a class action suit is a matter within the broad discretion of the trial court. <u>Staton v. Boeing</u>, 327 F.3d 938, 959 (9th Cir. 2003). Preliminary approval does not require the trial court to answer the ultimate question of whether a proposed settlement is "fair, reasonable and adequate." <u>In re Jiffy Lube Sec. Litig.</u>, 927 F.2d 155, 158 (4th Cir. 1991); <u>Manual for Complex Litigation</u>, Third, §§ 20.212. That determination is made only after notice of the settlement has been given to the members of the class and after the class members have been given an opportunity to voice their views of the settlement or to be excluded from the settlement class. See, e.g., 3B J. Moore, <u>Moore's Federal Practice</u> §§23.80 - 23.85 (2003).

In considering a potential settlement for preliminary approval purposes, the trial court does not have to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute (<u>Detroit v. Grinnell Corp.</u>, 495 F.2d 448, 456 (2d Cir. 1974)), and need not engage in a trial on the merits. <u>Officers for Justice v. Civil Serv. Comm'n</u>, 688 F.2d 615 (9th Cir. 1982), cert. denied, 459 U.S. 1217 (1983). The court is not required to determine that certification of a settlement class is appropriate until the final settlement approval. <u>In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.</u>, 55 F.3d 768, 797 (3d Cir. 1995).

The question of whether a proposed settlement is fair, reasonable and adequate necessarily requires a judgment and evaluation by the attorneys for the parties based upon a comparison of "the terms of the compromise with the likely rewards of litigation." <u>Weinberger v. Kendrick</u>, 698 F.2d 61, 73 (2d Cir. 1982), cert. denied 464 U.S. 818 (1983) (quoting <u>Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson</u>, 390 U.S. 414, 424-25 (1968)). Therefore, many courts recognize that the opinion of experienced counsel supporting the settlement is entitled to considerable weight. <u>Kirkorian v. Borelli</u>, 695 F. Supp. 446, 451 (N.D. Cal. 1988); <u>Reed v. General Motors Corp.</u>, 703 F.2d 170, 175 (5th Cir. 1983);

Weinberger, 698 F.2d at 74; Armstrong v. Board of School Directors, 616 F.2d 305, 325 (7th Cir. 1980); Fisher Bros. v. Cambridge-Lee Indus., Inc., 630 F. Supp. 482, 489 (E.D. Pa. 1985). For example, in Lyons v. Marrud, Inc., [1972-1973 Transfer Binder] Fed. Sec. L. Rep. (CCH) Paragraph 93,525 (S.D.N.Y. 1972), the court noted that "[e]xperienced and competent counsel have assessed these problems and the probability of success on the merits.  They have concluded that compromise is well-advised and necessary.  The parties' decision regarding the respective merits of their position has an important bearing on this case."  Id. at ¶ 92,520.

**B.     Factors To Be Considered In Granting Preliminary Approval**

A number of factors are to be considered in evaluating a settlement for purposes of preliminary approval.  No one factor should be determinative, but rather all factors should be considered.  These criteria have been summarized as follows:

If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that notice be given to the class members of a formal fairness hearing, at which evidence may be presented in support of and in opposition to the settlement.

Manual of Complex Litigation, Second §30.44, at 229.  Here, the settlement meets all of these criteria.

**1.     The Settlement is the Product of Serious, Informed and Noncollusive Negotiations**

This settlement is the result of extensive and hard fought negotiations.  Defendant denies each and every one of the claims and contentions alleged in this Action.  Defendant has asserted and continues to assert many defenses thereto, and has expressly denied and continues to deny any wrongdoing or legal liability arising out of the conduct alleged in the Action.  Nonetheless, Defendant has concluded that this Action be settled in the manner and upon the terms and conditions set forth in the Stipulation in order to avoid the expense, inconvenience, and burden of further legal proceedings, and the uncertainties of trial and appeals.  Defendant has decided

1    to put to rest the Released Claims of the Settling Classes.

2    The Parties scheduled a private mediation to take place before Mark Rudy, one of the

3    preeminent mediators of wage and hour class actions. In preparation for the mediation,

4    Defendant provided Class Counsel with information and data for the members of the Class.

5    Plaintiffs analyzed the data with the assistant of damages expert DM&A and prepared and

6    submitted a mediation brief to Mr. Rotman. Counsel for the Parties, after settlement

7    negotiations lasting the entire day, reached an agreement, based upon Mr. Rotman's expertise

8    as a mediator and the uncertainties of protracted litigation. Decl. Blumenthal at ¶7. Most

9    importantly, Plaintiffs and Class Counsel believe that this settlement is fair, reasonable and

10   adequate. By reason of the settlement, Defendant has agreed to establish a Gross Settlement

11   Value ("GSV") of one million two hundred forty five thousand U.S. dollars and no cents

12   ($1,245,000.00) to be distributed to the Settling Class members according to the plan of

13   allocation in the Agreement, as payment in full of all of the Class claims arising from the events

14   described in the Lawsuit, including Class Counsel's attorneys' fees and expenses, the Class

15   Representatives' Enhancement Awards, costs of claims administration and notice, and the

16   PAGA payment. (Agreement at ¶¶ 15, 51.)

17   Class Counsel has conducted a thorough investigation into the facts of the class action,

18   including an extensive review of relevant documents and data, formal discovery, and a diligent

19   investigation of the claims against Defendant. Decl. Blumenthal, ¶18. Based on the foregoing

20   documents and data, and their own independent investigation and evaluation, Class Counsel is

21   of the opinion that the settlement with Defendant for the consideration and on the terms set forth

22   in the Agreement is fair, reasonable, and adequate and is in the best interest of the class in light

23   of all known facts and circumstances, including the risk of significant delay, defenses asserted

24   by Defendant, and numerous potential appellate issues. Defendant and Defendant's counsel

25   also agree that the Settlement is fair and in the best interest of the Settling Classes.

26   Plaintiffs and Class Counsel recognize the expense and length of continuing to litigate

27   and trying this Lawsuit against Defendant through possible appeals which could take several

28

years.  Class Counsel has also taken into account the uncertain outcome and risk of litigation, especially in complex actions such as this litigation.  Class Counsel is also mindful of and recognize the inherent problems of proof under, and alleged defenses to, the claims asserted in the Class Action.  Based upon their evaluation, Plaintiffs and Class Counsel have determined that the settlement set forth in the Agreement is in the best interest of the Class Members.  Decl. Blumenthal, ¶26.

Here the negotiations have been hard-fought and aggressive with capable advocacy on both sides. Decl. Blumenthal, ¶27.  Accordingly, "[t]here is likewise every reason to conclude that settlement negotiations were vigorously conducted at arms' length and without any suggestion of undue influence."  In re Wash. Public Power Supply System Sec. Litig., 720 F. Supp. 1379, 1392 (D. Ariz. 1989).

### 2.      The Settlement Has No "Obvious Deficiencies" and Falls Within the Range for Approval

The proposed Settlement herein has no "obvious deficiencies" and is well within the range of possible approval.  All Settling Class Members will receive an opportunity to participate in and receive payment.

In advance of negotiations, Class Counsel received class data which permitted Class Counsel to make a settlement demand.  For the individuals whose claims are at issue in this Lawsuit, Plaintiffs reviewed the data and used information provided by defendant to determine the damage valuation using Plaintiffs' damage expert, DM&A.  Plaintiffs calculated that the maximum recovery, assuming all potential penalties were awarded at the maximum rate, totaled $3.9 million, with the actual damages calculated to be $900,000 and penalties to be about $3 million.  Decl. Blumenthal, ¶8.

Consequently, Defendant was subject to total potential claims of $3.9 million for the combination of damages, penalties and interest for the entire Class Period.  The settlement of $1,245,000.00, before deductions, represents significantly more than the alleged damages and 32% of the value of all potential claims and penalties, assuming these amounts could be proven

at trial.  Defendant disputed these calculations and contended that any potential damages and penalties were far less than this amount.  Clearly the goal of this litigation to obtain redress for the Class has been met by this settlement.  Decl. Blumenthal, ¶8.

In  Glass v. UBS Fin. Servs., 2007 U.S. Dist. LEXIS 8476 (N.D. Cal. January 27, 2007) the federal district court for the Northern District of California recently approved a settlement of an action claiming unpaid overtime wages where the settlement amount constituted approximately 25% to 35% of the estimated actual loss to the class.   Here, the settlement consideration constitutes more than the estimated damages for the Settling Classes and a reasonable percentage of the maximum value of all potential claims.

In Glass, the federal court ruled that the settlement which represented approximately 25 to 35% of the loss to the class was fair, reasonable, and adequate.  Id. at 28.  A fortiori, this settlement is most certainly entitled to preliminary approval.

Where both sides face significant uncertainty, the attendant risks favor settlement. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998).  Here, a number of defenses asserted by Defendant presented serious threats to the claims of Plaintiff and the other Class Members. Defendant likely would contend that Defendant's employment practices complied with all applicable Labor laws.

For example, Defendant contended that Class Members worked for separate businesses called Virtual Service Corporations who were independent contractors of Arise, and that accordingly Class Members were not employees of Arise.  Defendant maintained that all of the individuals were actually employed by their Virtual Service Corporation ("VSC") and that Defendant contracted with the VSC, and not the individuals.  Defendant argued that Internal Revenue Service and the U.S. Equal Employment Opportunity Commission, have considered and determined that individuals who perform the same kind of services provided by the members of the Settling Classes  are independent contractors or employees of their VSCs, and not employees of Defendant.  Finally, Defendant countered that, assuming arguendo that a class is certified and assuming that the individuals are found to be Defendants' employees, the facts

show that Defendants have not violated California's employment laws, or any violations were *de minimis* at best.  If successful, Defendant's defenses could eliminate or substantially reduce any recovery to the Settling Classes.  While Plaintiffs believe that these defenses could be overcome, Defendant maintains these defenses have merit and therefore present a serious risk to recovery by the Class.  Decl. Blumenthal at ¶28.

There was also a significant risk that, if the Actions were not settled, Plaintiffs would be unable to obtain class certification and thereby not recover on behalf of any employees other than themselves.  Defendant forcefully opposed class certification, arguing that individual issues precluded class certification.  While other cases have approved class certification in wage and hour claims, class certification in this action would have been hotly disputed and was by no means a foregone conclusion.  Decl. Blumenthal at ¶29.

After vigorous negotiations, the Parties agreed to the Settlement of $1,245,000.  Recognizing the potential risks, both sides agreed.  As the federal court recently held in Glass, where the parties faced uncertainties similar to those here:

> In light of the above-referenced uncertainty in the law, the risk, expense, complexity, and likely duration of further litigation likewise favors the settlement. Regardless of how this Court might have ruled on the merits of the legal issues, the losing party likely would have appealed, and the parties would have faced the expense and uncertainty of litigating an appeal. "The expense and possible duration of the litigation should be considered in evaluating the reasonableness of [a] settlement." See In re Mego Financial Corp. Securities Litigation, 213 F.3d 454, 458 (9th Cir. 2000).

Here, the risk of further litigation is substantial.

### 3. The Settlement Does Not Improperly Grant Preferential Treatment To The Class Representative or Segments Of The Class

The relief provided in the settlement will benefit all Class Members equally.  The settlement does not improperly grant preferential treatment to the Class Representatives or any individual segments of the Class.

Each Settling Class Member, including the Plaintiff, will be entitled to cash payment based on the plan of allocation.  Decl. Blumenthal at ¶6.  Each Class Member's Payment will be determined as follows:

1    The Net Settlement Value shall be allocated to the Settling Class as follows: (a) The
2    Claims Administrator will determine, from either the spreadsheets referenced in Paragraph 26
3    or the resolution of a dispute pursuant to Paragraph 56, the number of weeks that the member
4    of the Settling Classes provided customer service or technical support services on applications
5    for AT&T or Apple accounts while in the State of California during the applicable Class Period
6    (the "Compensable Intervals"); (b) The total number of Compensable Intervals attributable to
7    all members of the Settling Classes who filed a timely and complete Claim Form will then be
8    divided into the NSV, with the number of Compensable Intervals as the denominator and the
9    NSV as the numerator, with the resulting number determined to two decimal places; and (c) The
10   product of this calculation will be the Per Interval Payment.  (Agreement at ¶58.)  The
11   disbursement to each member of the Settling Classes who returns a timely and complete Claim
12   Form (the "Class Member Payment") shall be the number which results from multiplying the
13   Per Interval Payment times the number of Compensable Intervals worked by a given member
14   of the Settling Classes.  (Agreement at ¶59.)   Decl. Blumenthal at ¶20.

15   In addition, the Class Representatives will apply to the trial court for a service award of
16   $5,000 for Plaintiffs Counts and Mariner-Reed, and $30,000 for Plaintiff Perry.  (Agreement
17   at ¶39.)  In Glass, the district court awarded each of the class representatives in an overtime
18   wages class action a service award of $25,000.  Glass, 2007 U.S. Dist. LEXIS 8476 at *51-52.
19   The payment of service payment in this amount to the named plaintiff in a wage and hour class
20   action is approved by settled authority, and the amount of the requested service payment is
21   reasonable in this case in light of the amount approved in Glass and other decisions.  See e.g.
22   Van Vranken v. Atlantic Richfield Co., 901 F.Supp. 294, 299-300 (N.D. Cal. 1995)(incentive
23   award of $50,000); In re Dun & Bradstreet Credit Servs. Customer Litig., 130 F.R.D. 366 (S.D.
24   Ohio 1990) (two incentive awards of $ 55,000, and three incentive awards of $ 35,000).

25   **4.    The Stage Of The Proceedings Is Sufficiently Advanced To Permit Preliminary Approval Of The Settlement**
26

27   The stage of the proceedings at which this settlement was reached also militates in favor
28   of preliminary approval and ultimately, final approval of the settlement.  Class Counsel has

---

1   conducted a thorough investigation into the facts of the class action.  Class Counsel began

2   investigating the Class Members' claims before this action was filed.  Class Counsel served

3   extensive written discovery on Defendant.  Defendant produced documents in response to the

4   discovery, which documentation Class Counsel reviewed.  Therefore, much of the discovery

5   necessary to move for class certification was performed by the parties, with only depositions

6   remaining to be conducted.  Decl. Blumenthal at ¶30.

7          Class Counsel also obtained production of class member data produced through informal

8   discovery.  Class Counsel engaged in an extensive review and analysis of the relevant

9   documents and data.  Accordingly, the agreement to settle did not occur until Class Counsel

10  possessed sufficient information to make an informed judgment regarding the likelihood of

11  success on the merits and the results that could be obtained through further litigation.  Decl.

12  Blumenthal at ¶31.

13         Based on the foregoing documents and data and their own independent investigation and

14  evaluation, Class Counsel is of the opinion that the settlement with Defendant for the

15  consideration and on the terms set forth in the Agreement is fair, reasonable, and adequate and

16  is in the best interest of the class in light of all known facts and circumstances, including the risk

17  of significant delay, defenses asserted by Defendant, and numerous potential appellate issues.

18  Defendant and Defendant's counsel also agree that the Settlement is fair and in the best interest

19  of the Settling Class Members.  There can be no doubt that Counsel for both parties possessed

20  sufficient information to make an informed judgment regarding the likelihood of success on the

21  merits and the results that could be obtained through further litigation.  Decl. Blumenthal at ¶32.

22         In Glass, the Northern District of California recently granted final approval of an wage

23  and hour class action although in Glass no formal discovery had been conducted prior to the

24  settlement:

25         Here, no formal discovery took place prior to settlement. As the Ninth Circuit has
        observed, however, "[i]n the context of class action settlements, 'formal discovery
26      is not a necessary ticket to the bargaining table' where the parties have sufficient
        information to make an informed decision about settlement." See In re Mego
27      Financial Corp. Securities Litigation, 213 F.3d at 459.

28

---

1    2007 U.S. Dist. LEXIS 8476 at *14.

2         Here, Class Counsel was in a better position to evaluate the fairness of this settlement

3    as in <u>Glass</u> because there was significant formal discovery and informal discovery as well as

4    independent investigations and due diligence to confirm the accuracy of the information

5    supplied by Defendant.

6

7    **VI.    THE CLASS IS PROPERLY CERTIFIED FOR SETTLEMENT PURPOSES**

8         The proposed settlements meet all of the requirements for certifying a settlement class

9    under Fed. R. Civ. P. §23(b)(2) as demonstrated below, and therefore, the Court may

10   appropriately approve the Settling Classes as defined in the Agreement.  This Court should

11   conditionally certify a class for settlement purposes only that consists of:

12        (a)    All individuals who provided customer service or technical support
          services on applications for AT&T Mobility LLC accounts, while located in the
13        State of California, pursuant to Statements of Work with Arise Virtual Solutions
          Inc. during the period March 28, 2007 through to the earlier of the date this
14        Settlement receives Preliminary Approval or August 31, 2012 (hereafter referred
          to as the "Perry Class"); and,

15        (b)    All individuals who provided customer service or technical support
16        services on applications for Apple Inc. accounts, while located in the State of
          California, pursuant to Statements of Work with Arise Virtual Solutions Inc.
17        during the period December 8, 2007 through to the earlier of the date this
          Settlement receives Preliminary Approval or August 31, 2012 (hereafter referred
18        to as the "Counts Class").

19   Agreement at ¶20.

20   The Settling Class consists of about 211 individuals.

21        **A.    Rule 23 of the Federal Rules of Civil Procedure Governs**

22        Plaintiffs seek certification of this Lawsuit for settlement purposes under F.R.C.P

23   §23(b)(3).  This portion of rule 23 applies to class actions where "the court finds that the

24   questions of law or fact common to the members of the class predominate over any questions

25   affecting only individual members, and that a class action is superior to other available methods

26   for the fair and efficient adjudication of the controversy."  Fed.R.Civ.P. 23(b)(3).

27        To maintain a class action under rule 23(b)(3), the four prerequisites of F.R.C.P. Rule

28   23(a) must first be satisfied.  These prerequisites are referred to as numerosity, commonality,

---

MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT
Case No.3:11-cv-01488-YGR

typicality, and adequacy of representation, and are set forth in Rule 23(a) as follows:

(1)   the class is so numerous that joinder of all members is impracticable,
(2)   there are questions of law or fact common to the class,
(3)   the claims or defenses of the representative parties are typical of the claims or defenses of the class, and
(4)   the representative parties will fairly and adequately protect the interests of the class.

While Defendant disputes that the Plaintiffs can satisfy any of these requirements, the Parties agree that, for purposes of settlement, these requirements may be satisfied in this case, and therefore, the proposed Settling Class should be certified for purposes of settlement only.

**B.       The Numerosity Requirement Is Satisfied**

Rule 23(a) merely requires that the class be "so numerous that joinder of all members is impracticable." F.R.C.P. §23(a). "Courts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members." EEOC v. Kovacevich "5" Farms, 2007 U.S. Dist. LEXIS 32330 at *57 (E.D.Cal. April 18, 2007); see also Slaven v. BP Am., Inc., 190 F.R.D. 649, 654 (C.D. Cal. 2000); Ansari v. New York Univ., 179 F.R.D. 112, 114 (S.D.N.Y. 1998); Lockwood Motors, Inc. v. General Motors Corp., 162 F.R.D. 569, 574 (D. Minn. 1995). In Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995), the Court held that "numerosity is presumed at a level of 40 members." The Ninth Circuit observed that classes with fewer than 70 members have been certified in numerous cases. Jordan v. County of Los Angeles, 669 F.2d 1311, 1320 n.10 (9th Cir. 1982), vacated on other grounds, 459 U.S. 810, 103 S. Ct. 35, 74 L. Ed. 2d 48 (1982) (noting that classes with fewer than 70 members have been certified in numerous cases).

Here, the Settling Class is composed of about 211 Settling Class Members, which is sufficiently numerous for settlement purposes. Decl. Blumenthal at ¶33.

**C.       Common Questions of Law and Fact Bind the Class**

Rule 23(a) requires that there be a common question of law or fact. There is no requirement that the members of the class be identically situated, only that there exists one or more factual or legal questions common to all members. Jenson v. Continental Fin. Corp., 404 F. Supp. 806 (D. Minn. 1975). This threshold of "commonality" is not particularly high.

1   Jenkins v. Raymark Ind., Inc., 782 F.2d 468, 472 (5th Cir. 1986).  The fundamental question

2   is whether the resolution of the common legal or factual questions would affect all or a

3   substantial number of the class members.  Jenkins, supra, 782 F.2d at 472.  Indeed, if a claim

4   "arises out of the same legal or remedial theory, the presence of factual variations is normally

5   not sufficient to preclude class action treatment."  Donaldson v. Pillsbury Co., 554 F.2d 825,

6   831 (8th Cir. 1977), cert. denied, 434 U.S. 856 (1977).

7          Rule 23(a) is satisfied where "the course or conduct giving rise to the cause of action

8   affects all class members, and at least one of the elements of that cause of action is shared by

9   all of the class members."  Lockwood Motors, 162 F.R.D. at 575.  This requirement is met if

10  common questions of liability are present, even if there may be individual variations.  In re

11  Workers' Compensation, 130 F.R.D. 99, 104 (D. Minn. 1990).

12         Here, common questions of law and fact, as alleged by the Plaintiff, are present,

13  specifically the question of whether the members of the Settling Classes were independent

14  contractors or employees.  Decl. Blumenthal, ¶33.  Defendant disputes that commonality exists

15  for purposes of a litigation class, and believes that individualized issues would preclude any

16  ability to arrive at a common answer in the context of litigation, but does not oppose such a

17  finding for purposes of this settlement only.

18         **D.     The Claims of the Plaintiff Are Typical of the Class Claims**

19         The typicality requirement of Rule 23(a) requires that the members of the class have the

20  same or similar claims as the named plaintiff.  "The typicality requirement is met when the

21  claims of the named plaintiff arise from the same event or are based on the same legal theories."

22  Tate v. Weyerhaeuser Co., 723 F.2d 598, 608 (8th Cir. 1983).  In Hanlon v. Chrysler Co., 150

23  F.3d 1011 (9th Cir. 1998), the Ninth Circuit held that "[u]nder the rule's permissive standards,

24  representative claims are 'typical' if they are reasonably coextensive with those of absent class

25  members; they need not be substantially identical."  50 F.3d at 1020.  Typicality "does not mean

26  that the claims of the class representative[s] must be identical or substantially identical to those

27  of the absent class members."  Stanton, supra, at 957.

28         In the instant case, there can be little doubt that the typicality requirement is fully

satisfied.  The Plaintiffs, like every other member of the Settling Classes, performed services on AT&T or Apple accounts pursuant to a Statement of Work and were classified as independent contractors.  The Plaintiffs, like every other member of the Settling Classes, claim compensation as a result of the independent contractor classification, including compensation for unpaid overtime and business expenses.  Thus, the claims of both the Plaintiffs and the members of the Settling Classes arise from the same course of conduct by Defendant, involve the same issues, and are based on the same legal theories.  Decl. Blumenthal, ¶33.  The typicality requirement of Rule 23 is met as to the common issues presented in this case.  While Defendant disputes that typicality exists for purposes of litigation - due to the fact-specific and individualized nature of individuals' relationships with their employing company and with Arise - Defendant does not oppose a finding of typicality for purposes of this settlement only.

**E.   The Class Representatives Have Fairly and Adequately Protected the Interest of the Classes**

The Class Representatives provided adequate representation of the interests of the class in that: (a) their attorneys are competent, experienced in class litigation and generally able to conduct the proposed litigation; and (b) the Class Representatives do not have interests antagonistic to those of the class.  White v. Local 942, 688 F.2d 85, (9th Cir. 1982).  Simply put, Rule 23 asks whether the Class Representatives will vigorously prosecute on behalf of the class and have a basic understanding of the claims.  This requirement has been met here.  First, Plaintiffs are well aware of their duties as the representatives of the class and has actively participated in the prosecution of this case to date.  Plaintiffs effectively communicated with Class Counsel, providing documents to Class Counsel and participated extensively in discovery and investigation of the action.  The personal involvement of the Plaintiffs was essential to the prosecution of the action and the success of the mediation.  Decl. Blumenthal, ¶33.  Second, the Plaintiffs retained competent counsel who have extensive experience in class actions. See Decl. Blumenthal at ¶29.  Class Counsel has extensive experience in class action litigation in California and throughout the country.  Class Counsel has been involved as class counsel in over two hundred (200) class action matters, including many wage and hour class actions.  See

e.g., Resume, attached as <u>Exhibit 2</u> to the Decl. Blumenthal at ¶34.  Third, there is no antagonism between the interests of the Plaintiffs and those of the Settling Classes.  Both the Plaintiffs and the members of the Settling Classes seek monetary relief under the same set of facts and legal theories.  Under such circumstances, there can be no conflicts of interest, and adequacy of representation is presumed.  <u>In re Wirebound Boxes Antitrust Lit.</u>, 128 F.R.D. 268 (D. Minn. 1989).   While Defendant disputes that the Plaintiffs are adequate class representatives, Defendant does not oppose such a finding for purposes of this settlement only.

**F.  For the Class As Alleged in the Amended Complaint, The Additional Requirements of Rule 23 Are Satisfied**

Since the requirements of Rule 23(a) have been satisfied, the Court now must look to Rule 23(b)(3) in order to determine whether a class should be maintained under one of the listed categories.  Under Rule 23(b)(3), a class action may be maintained if two basic conditions are met.  First, common questions must predominate over individual issues, and second, the class action must be superior to other available other methods for the fair and efficient adjudication of the controversy.

**1.     The Predominance Requirement Is Met**

Rule 23(b)(3) provides that a class may be maintained if "the court finds that the questions of law and fact common to the members of the class predominate over any questions affecting only individual members."  There is no bright line to determine whether common issues predominate.   A claim will meet the predominance requirement in cases where generalized evidence of the Defendant's conduct will prove or disprove an element of the claim on a simultaneous class-wide basis.  The "fundamental question" is whether the claim asserted is seeking a remedy to a "common legal grievance."  <u>Lockwood Motors</u>, 162 F.R.D. at 580; <u>Buchholtz v. Swift & Co.</u>, 62 F.R.D. 581, 598 (D.Minn. 1973).  Further, the mere fact that there are certain issues that may need to be determined on an individual basis does not preclude the satisfaction of the predominance requirement.  See Newberg & Comte, <u>Newberg on Class Actions</u> §4.25 (3d ed. 1992).

Here, the adjudication of the common issues surrounding Defendant's uniform practices

1  and systematic classification policy could establish Defendant's liability on a class-wide basis.

2  Plaintiffs contend that Defendant had engaged in a uniform course of conduct with respect to

3  the ACPs which resulted in a systematic failure to provide compensation and other employee

4  benefits as required by law and that Defendant's policies with respect to these issues are

5  uniform.  The only question is whether Defendant's conduct supports a meritorious claim for

6  liability.  Such suits challenging the legality of a standardized course of conduct are generally

7  appropriate for resolution by means of a class action.  Accordingly, Plaintiff would argue that

8  the common issues of law and fact present in this case predominate.  Decl. Blumenthal at ¶33.

9      In the context of wage and hour litigation, courts have often found that common issues

10  predominate where an employer treats the putative class members uniformly, even where the

11  party opposing class certification presents evidence of individualized variations.  See e.g.

12  Ghazaryan v. Diva Limousine, Ltd., 169 Cal. App. 4th 1524, 1538 (2008) (wage and hour

13  claims  "routinely proceed as class actions"); Prince v. CLS Transportation, Inc., 118

14  Cal.App.4th 1320, 1329 (2004); Estrada v. FedEx Ground Package System, Inc., 154

15  Cal.App.4th 1, 14 (2007).

16      While Defendant disputes that the predominance requirement may be satisfied for

17  purposes of a litigation class, contending that individual factual inquiries into the circumstances

18  of individual class members would defeat class certification, Defendant does not oppose such

19  a finding for purposes of this settlement only.

20                    **2.    The Superiority Requirement Is Met**

21      To certify a class, the Court must also determine "that a class action is superior to other

22  available methods for the fair and efficient adjudication of the controversy."  F.R.C.P. Rule 23

23  (b)(3). "Where classwide litigation of common issues will reduce litigation costs and promote

24  greater efficiency, a class action may be superior to other methods of litigation." Valentino v.

25  Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996).

26      "If the plaintiffs' claims are substantiated, a question as to which the court presently has

27  no opinion, the class action mechanism is clearly the most efficient means of resolving the many

28  claims which may be asserted.  If the case were not handled as a class, thousands of small

1   claims would either be brought or unjustly abandoned. The first possibility would be a flood
2   of cases, the second would involve individual claims abandoned because of cost." <u>In re</u>
3   <u>Workers' Compensation.</u>, 130 F.R.D. at 110.

4          Here, a class action is the superior mechanism for adjudication of the claims as pled by
5   the Plaintiffs. While Defendant disputes that the superiority requirement may be satisfied for
6   purposes of a litigation class, Defendant does not oppose such a finding for purposes of this
7   settlement only.

8   **VII.    THE PROPOSED METHOD OF CLASS NOTICE IS APPROPRIATE**

9          The Parties have agreed upon procedures by which the Settling Classes will be provided
10  with written notice of the Settlement similar to that approved and utilized in hundreds of class
11  action settlements. The Parties have jointly drafted Class Notices and Claim Forms, attached
12  to the Agreement as <u>Exhibits B, C, E and F</u> and are hereby for approval.

13         The Notice, drafted jointly and agreed upon by the Parties through their respective
14  counsel, includes information regarding the nature of the Lawsuit; a summary of the substance
15  of the Settlement, including Defendant's denial of liability; the definition of the Settling Class;
16  the procedure and time period for objecting to the Settlement, exclusion from the Settlement and
17  participating in the Settlement; a statement that the District Court has preliminarily approved
18  the Settlement; and information regarding the claims filing procedure and the opt-out procedure.
19  See <u>Exhibits B and C</u> to the Agreement. Attached to the Notice will be a Claim Form in the
20  form attached to the Agreement as <u>Exhibit E and F</u>. The Claim Form shall be individualized
21  for each member of the respective Settling Class with information reflecting the time periods
22  during the Class Period in which the corporation and the individual and related business entities
23  provided customer service or technical support services on applications for AT&T or Apple
24  accounts, as well as the number of weeks during which the member of the Settling Classes
25  provided customer service or technical support services on applications for AT&T or Apple
26  accounts while in the State of California during the applicable Class Period. Additionally, the
27  Class Notices will contain the estimated dollar value of the Class Member Payment.
28  (Agreement at ¶46.)

The Notice shall state that Class Members who wish to participate in the settlement shall complete and return the Claim Form pursuant to the instructions contained therein by first class mail or equivalent, postage paid.  The Notice shall also provide that any Class Member may choose to opt out of the Class, and that any such person who chooses to opt out of the Class will not be entitled to any recovery obtained by way of the settlement and will not be bound by the settlement or have any right to object, appeal or comment thereon.

The Notice will provide that all objections to the Settlement by anyone, including members of the Settling Class, must be filed in the District Court and served upon all counsel of record by no later than forty-five (45) days from the mailing of the Notice.  The deadline applies notwithstanding any argument regarding non-receipt of the notice.  All objections must state with particularity the basis on which they are asserted.  In accordance with <u>Mercury Interactive Corp. Secs. Litig. v. Mercury Interactive Corp.</u>, 618 F.3d 988 (9th Cir 2010), the application for attorneys' fees and costs will be filed when the notice is distributed to the Settling Classes, and the notice will direct members of the Settling Classes to where they may view the application for attorneys' fees and costs.  Thus, all members of the Settling Classes will have ample opportunity to review and comment on the attorneys' fees and costs before the objection deadline.  The attorneys' fees and costs will be heard in conjunction with the motion for final approval on the Final Approval Hearing date as set by this Court in the Preliminary Approval Order.  Decl. Blumenthal at ¶34.

The notice also informs members of the Settling Class about the release.  Specifically, the notice explains that unless they exclude themselves, upon final approval they will release any and all claims asserted in the Lawsuit and all claims that could be asserted based on the facts alleged in the complaint, against the Releasees.  Decl. Blumenthal at ¶36.

This notice program was designed to meaningfully reach the largest possible number of members of the Settling Classes.  Before mailing, the Claims Administrator will process the class list through the United States Postal Service's National Change of Address database ("NCOA") and perform address searches.  (Agreement at ¶¶ 27-28.)  The mailing and distribution of the Notice satisfies the requirements of due process, and is the best notice

practicable under the circumstances and constitutes due and sufficient notice to all persons entitled thereto.  Decl. Blumenthal at ¶36.

This notice satisfies the content requirements for notice following the exemplar class notice in the <u>Manual for Complex Litigation</u>, Second §41.43.  This notice also fulfills the requirement that Class notices be neutral. <u>Newberg</u>, at §8.39.

**VIII.   CONCLUSION**

Counsel for the Parties have committed substantial amounts of time, energy, and resources litigating and ultimately settling this case.  In the judgment of Plaintiffs and Class Counsel, the proposed settlement is a fair and reasonable compromise of the issues in dispute in light of the strengths and weaknesses of each party's case.  After weighing the certain and immediate benefits of these settlements against the uncertainty of trial, and appeal, Plaintiffs believe that the proposed settlement is fair, reasonable and adequate, and warrants this Court's preliminary approval.

Accordingly, Plaintiffs respectfully requests that the Court preliminarily approve the proposed settlement and enter the proposed Preliminary Approval Order submitted herewith.

Dated: October 25, 2012                 BLUMENTHAL, NORDREHAUG & BHOWMIK

By:     */s/ Norman B. Blumenthal*
              Norman B. Blumenthal
              Attorneys for Plaintiff

K:\D\Dropbox\Pending Litigation\Arise - Perry\Preliminary Approval\p-Motion and memo - FINAL.wpd